50 F.3d 22
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
ORDNANCE DEVICES, INC., Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 94-5126.
 United States Court of Appeals, Federal Circuit.
 March 27, 1995.
Rehearing Denied May 16, 1995.
 
 Before MAYER, MICHEL and BRYSON, Circuit Judges.
 BRYSON, Circuit Judge.
 
 
 1
 Ordnance Devices, Inc., (ODI) appeals from a decision of the Court of Federal Claims denying compensation for alleged takings of real and personal property. Because ODI has failed to demonstrate any error in the trial court's decision, we affirm.
 
 
 2
 * Micronics International, Inc., (Micronics) entered into six contracts with the Navy to produce Safe and Arming Devices (S & A Devices) for certain missile systems. On September 11, 1989, Micronics filed for bankruptcy. On that date, the six contracts were in various stages of completion. ODI subsequently purchased substantially all of Micronics' assets for $1.1 million. ODI then asked the Navy to novate the six contracts; ODI intended to use Micronics' inventory to complete the work under the contracts. The Navy, however, declined to novate the contracts.
 
 
 3
 The government began removing the inventory in August 1990 and had removed the last of it by January 1991. ODI brought suit in the Court of Federal Claims alleging a governmental taking of the S & A Device inventory and claiming rent for the use of the storage space at ODI's facility. ODI also claimed a taking based on the government's failure to novate the six contracts. The Court of Federal Claims dismissed the failure-to-novate count for failure to state a claim and ruled in favor of the United States on the other claims after trial. This appeal followed.
 
 II
 
 4
 The threshold issue in this case is whether ODI received any interest in the Micronics inventory. The bankruptcy court order authorizing Micronics to sell its assets to ODI contained the following provision:
 
 
 5
 ORDERED, that Micronics is authorized to sell substantially all of its assets to ODI ...; however, Micronics shall not sell and this sale does not purport to sell any ... parts, materials, inventories, work in progress, special tooling, or special test equipment which belong to the United States pursuant to the progress payment clauses in Micronics's contracts.
 
 
 6
 "Progress payment clauses" allow the government to lend money to its contractors to fund the work under contract. The standard progress payment clause contains a "take title" provision, which states that title to all parts, materials, inventories, and work in progress shall vest in the government as soon as the property becomes allocable to the contract. See Federal Acquisition Regulation (FAR), 48 C.F.R. Secs. 52.232-16(d)(1), 52.232-16(d)(2)(i).
 
 
 7
 In Marine Midland Bank v. United States, 687 F.2d 395 (Ct.Cl.1982), cert. denied, 460 U.S. 1037 (1983), the Court of Claims construed the "take title" provision, despite its apparent breadth, to give the government an interest "far less than full ownership." Id. at 398. Under Marine Midland, the "take title" provision grants the government a lien on the inventory akin to a purchase money security interest and a paramount right to possession. Id. at 400, 403-04.
 
 
 8
 Because Marine Midland holds that the "take title" provision does not give the government full ownership rights in the inventory, ODI argues that the inventory did not "belong to the United States pursuant to the progress payment clauses" in the Micronics contracts, and that the bankruptcy court's order therefore did not prevent Micronics from selling the inventory to ODI. Review of the bankruptcy court's order, however, does not support that interpretation. Instead, it is evident from the terms and the background of the bankruptcy court's order that the court intended to exclude the progress payment inventory from the general sale of assets to ODI.
 
 
 9
 At the time of the proposed asset sale between Micronics and ODI, the government filed an objection, stating that the sale agreement purported to sell inventory that the government owned pursuant to the progress payment clauses. The government proposed that the court include restrictive language in the sale agreement to address that problem, and the court ultimately adopted language similar to the language the government had suggested. In addition, the order required ODI to provide Micronics' records to the government in order to help identify the exempted inventory and granted the government a right of access to the facility to enable the government to inventory the exempted materials. Furthermore, the bankruptcy court separately addressed the subject of creditors who might have a continuing lien interest in the material being sold. The fact that the court did not list the United States as a potential creditor in that portion of the order confirms that the bankruptcy court considered the government to own, rather than to have merely a security interest in, the progress payment inventory. Finally, even if the bankruptcy court misperceived the effect of Marine Midland, the court's order was broad enough to foreclose the sale of the inventory, inasmuch as the reference to inventory that "belong[ed] to the United States pursuant to the progress payment clauses" was a sufficient, if imprecise, way of describing property in which the government had a security interest and a paramount right of possession.
 
 
 10
 Because the bankruptcy court's order must be interpreted as forbidding the sale of the progress payment inventory to ODI as part of the asset purchase agreement, ODI never obtained a property interest in the inventory. Therefore, ODI may not recover for any alleged taking of the progress payment inventory when the government took possession of it.
 
 
 11
 As it happens, ODI's takings claim does not turn solely on the interpretation of the bankruptcy court's order, because even under ODI's interpretation of the order, the inventory was so heavily encumbered by the government's security interest that the inventory had no residual value. At trial, the government established that it had at least a $5.1 million claim against the S & A Device inventory. The trial court found that the value of the inventory was not remotely close to that amount, and that in fact the inventory had only scrap value. Although ODI contends that the trial court's finding on the issue of valuation is clearly erroneous, we reject that contention. ODI's owner testified at trial that the inventory was worthless unless the contracts were novated, and there was no evidence at trial to suggest that the inventory had a fair market value of more than the $5.1 million security interest held by the government. Nor did ODI present any compelling reason to depart from the standard market valuation test in favor of a different test that would have accorded the inventory a value exceeding the government's security interest.
 
 III
 
 12
 ODI next claims that the government owes rental value for the period that the government left the inventory on ODI's premises. ODI bases its claim on alternative theories of an implied-in-fact contract and a temporary taking.
 
 
 13
 An implied-in-fact contract requires mutuality of intent to contract, consideration, lack of ambiguity in offer and acceptance, and actual authority on the part of the government representative. El Centro v. United States, 922 F.2d 816, 820 (Fed.Cir.1990), cert. denied, 501 U.S. 1230 (1991). In this case, the trial court found that no meeting of the minds occurred between ODI and the government. Because that finding is not clearly erroneous, ODI's implied-in-fact contract theory fails.
 
 
 14
 In response to ODI's takings claim, the government relies on two findings of fact made by the trial court. First, the court found that ODI wanted the inventory to remain on its premises until the government decided whether to novate the contracts. Second, the court found that the government removed the property within a reasonable time after ODI demanded its removal. Neither finding is clearly erroneous.
 
 
 15
 ODI's president admitted at trial that ODI wanted the inventory to remain on its premises while it sought to have the contracts novated, and ODI continued to seek novation of several of the contracts as late as October 1990. Moreover, although ODI stated that it expected to be paid for storing the inventory as of July 1, 1990, it did not release the inventory at that time. In a letter dated July 18, 1990, ODI advised the government that it would allow the inventory to be removed only "after receipt of compensation." ODI demanded payment of $635,209 and stated that "[u]pon receipt of this sum, any and all property will be remanded to the Government." When the government contested that claim in a letter dated August 6, 1990, ODI agreed to permit government agents to pick up the inventory for the first two contracts. The inventory for those contracts was removed later that month.
 
 
 16
 By October 1990, ODI's president concluded that the remaining contracts would not be novated, and he instructed the government to remove the inventory relating to those contracts at that time. The government began removing the inventory relating to those contracts in October 1990, and by January 1991 the removal process was completed.
 
 
 17
 Under these circumstances, ODI's argument that it suffered a taking of the rental value of its real property is not persuasive. ODI voluntarily retained the inventory for a substantial portion of the period in question, either in the expectation that it would be able to persuade the government to novate the contracts, or under the color of a demand for compensation for the value of the inventory. ODI is plainly not entitled to compensation for the periods during which it chose to retain the inventory. And we reject ODI's contention that it was entitled to compensation for the rental value of its real property from the moment it released the inventory to the government. The trial court found as a fact that the government removed the inventory within a reasonable time after ODI released it, and that finding is not clearly erroneous. There was therefore no taking of the rental value of ODI's real property for which the government is required to provide compensation. See Restatement (Second) of Torts Sec. 177 (1965) (stating, in the context of tort, that when a landowner consents to the presence of an item on his land and subsequently withdraws his consent, the owner of the item is not liable for trespass if he removes the item "with reasonable promptness").
 
 
 18
 ODI's final claim is that the government's failure to novate the contracts, even though it knew that ODI was investing resources into continuing operations, constituted a taking of ODI's expectancy interest in its investment. In order to recover under the Takings Clause of the Fifth Amendment, however, a claimant must have a right in the taken property that "ha[s] the law back of [it]." Kaiser Aetna v. United States, 444 U.S. 164, 178 (1979). ODI had no right to have the contracts novated. The government novates contracts only if the novation is found to be in the government's interest. See FAR, 48 C.F.R. Sec. 42.1204(d). ODI took a business risk when it purchased Micronics' assets; it had no guarantee that the contracts would be novated. ODI may not now try to shift the risk of its decision onto the government.